kaw

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 07-40082-JAR |
| ) | |
| **WADE A. GLASSCOCK,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| _____) | |

## MEMORANDUM AND ORDER

The Court now considers defendant Wade A. Glasscock's Motion to Suppress Evidence and Statements (Doc. 44) and Motion to Dismiss or Alternatively for Sanctions (Doc. 45). The Court held a hearing on March 3, 2008. After considering the briefs and the testimony at the evidentiary hearing, the Court is ready to rule. For the reasons stated below, defendant's Motion to Suppress is denied and his Motion to Dismiss, or Alternatively for Sanctions, is also denied.

**Background**

Brian Rhodd is an officer in the criminal interdiction unit of the Shawnee County Sheriff's Office. Officer Rhodd patrols Interstate 70 just outside of Topeka, Kansas. On June 13, 2007, Officer Rhodd noticed a white commercial truck with out-of-state temporary license tags pass his location. The truck looked like a construction vehicle except that it carried few pieces of equipment. Officer Rhodd pulled off the median and continued behind the truck to examine further its visible contents.

A few moments later, Officer Rhodd noticed a gold Chevrolet Impala traveling behind

the truck. The Impala carried California plates and looked to Officer Rhodd like a rental car, which he intuitively thought was either a decoy or an escort vehicle. Officer Rhodd was able to catch the Impala quickly because it had slowed dramatically after noticing him. He passed the Impala on the left, looked at the driver as he drove by and noticed that the driver was sitting upright and had both hands firmly on the steering wheel. Officer Rhodd also noted that the driver did not look over at his patrol car as he passed by and that there was no passenger. He passed the Impala, which was going 50-55 mph.

Officer Rhodd continued in the left lane speeding up to get behind the white truck and to better read the temporary tag. He traveled in the left lane, just behind the left rear of the truck, and noticed that the temporary tag Q-777667 was from Florida, but he could not see the expiration date because it was blocked by the license plate light. Officer Rhodd called in the temporary tag to dispatch and waited for a response. While waiting on dispatch, he noticed fresh white paint on the bumper and tail light of the vehicle. He could see over the rear left tire well of the truck and saw that the bed of the truck was elevated by planks underneath the truck bed. He could also see that the elevated bed was caused by two wood planks over the tire well completely sealing off the gap between the tire and bed of the truck to the point where one could not see to the other side of the truck. The planks were painted black to match the support beam of the truck. Officer Rhodd, after looking at the planks above the tire, began to believe that the area sealed between the bed of the truck and the tire was a compartment.

After a few minutes, dispatch returned with no information on the temporary tags, finding that it was "not on file." Officer Rhodd then slowed to get behind the truck. He looked in his rear view mirror and noticed the gold Impala had sped up to within a few feet of his bumper; this

time he could see that there was another occupant in the passenger seat. The Impala slowed then sped up again to within a few feet of Officer Rhodd's patrol car. The Impala began to swerve in and out of its lane in an effort, according to Officer Rhodd, to get him to stop the Impala. Officer Rhodd did not stop the Impala, but noticed that the truck had signaled to exit the interstate onto Fairlawn Street in Topeka. Officer Rhodd did not immediately signal that he would follow the truck because he wanted the Impala to pass him, which was now speeding by him in the left lane. After obtaining the tags of the Impala, Officer Rhodd signaled and exited the interstate behind the truck. He activated his lights but not his siren, yet the truck did not stop while exiting the interstate. The truck came to an intersection and Officer Rhodd deactivated his lights. After the traffic light turned green, he activated his patrol lights again. This time, the truck continued on Sixth Street and pulled into a gas station. The truck circled the gas station's parking lot before coming to a stop on the other side of the parking lot near the exit.

      While approaching the truck, Officer Rhodd noticed that there were three pieces of equipment on the truck and an eight-foot ladder. He also viewed the fresh paint on the bumper and lights and could see the painted wooden planks as he passed the tire well. Officer Rhodd approached the driver and told him that he stopped him because his temporary tag was blocked. He requested the driver's license and insurance and the passenger's identification. The passenger gave Officer Rhodd a California identification card and the driver gave him a temporary license and a photo identification card. Officer Rhodd told the men that the temporary tag had come back not on file and that he could not read the expiration date. Officer Rhodd did not mention that he believed the vehicle to have a hidden compartment under the truck bed or that he had noticed that there was fresh paint on the rear bumper and tail lights. He

returned to his vehicle to run a check on the documents and to request a canine unit.

When he returned to the truck he noticed that the passenger was extremely nervous and that his hands shook. He asked the driver and passenger where they were headed and they responded that they were going to St. Louis for a construction job and that they were coming from Las Vegas. Officer Rhodd thought this was odd because the passenger of the vehicle was obviously a much older man, and concluded that he would not be helpful on a construction site. Officer Rhodd asked the men about their employer. The defendant responded that Pablo was his boss and that he did not know Pablo's last name. Before completing the citation, Officer Rhodd explained to the driver that he would need to exit the vehicle so that he could compare the VIN number with the number on the insurance card. While out of the truck, Officer Rhodd pointed out that the temporary tag was blocked and that there was fresh paint on the tail light and bumper. The passenger came out of the truck and walked back toward the rear of the truck where Officer Rhodd and the driver were talking about the paint and temporary tag. As Officer Rhodd moved towards the front of the truck, the canine unit arrived.

Officer Metz of the criminal interdiction and canine unit of the Shawnee County Sheriff's Office asked the men to sit on the curb as he walked his canine, Cisco, around the truck. Cisco walked around the truck and signaled to the compartment area by scratching and trying to go under the truck. The men were placed under arrest and into separate squad cars. The truck was taken to the Shawnee County Sheriff's lot where the bed of the truck was removed to find 327 kilograms of processed marijuana. The drugs were removed and the truck was left impounded at the Sheriff's Office. Sometime later, the Shawnee County Sheriff's Office held an auction where the vehicle was sold.

**Discussion**

Defendant argues that Officer Rhodd did not have reasonable suspicion to initiate the traffic stop. Defendant contends that because Officer Rhodd stopped the truck pursuant to K.S.A. § 8-133, which governs the display of a license plate, he made a mistake of law, as the truck displayed a temporary registration, which is governed by K.S.A. § 8-2409. Consequently, Officer Rhodd's reasons for stopping the truck were void *ab initio*. Alternatively, defendant argues that Officer Rhodd should have allowed the drivers to continue on their journey, in accordance with *United States v. Edgerton*,[1] once he noticed that the temporary tag was not expired.

First, the government counters that the display of the registration tag violated K.S.A. § 8-133 because that statute is read to include license plates and temporary tags. Second, the government asserts that Officer Rhodd had reasonable suspicion beyond that of the temporary tag violation because he observed what he thought was a secret compartment below the bed of the truck and that a gold vehicle was traveling in tandem with the truck. Last, the government argues that the traffic stop was valid because the display of the temporary tag violated K.S.A. § 8-1706(c), which references registration plates. Thus, even if the reasons for the stop dissipated when Officer Rhodd noticed the date on the registration plate, he still had reason to detain the vehicle.

A traffic stop is an investigatory detention which is analyzed under *Terry v. Ohio*.[2] Under *Terry*, there is a two-prong test to determine whether an investigatory stop was

---

[1] 438 F.3d 1043 (10th Cir. 2006).

[2] 392 U.S. 1 (1968); *see United States v. Sanchez*, __ F.3d. __, 2008 WL 697398, at *3 (10th Cir. Mar. 17, 2008) (citing *United States v. Leos-Quijada*, 107 F.3d 786, 792 (10th Cir. 1997)).

reasonable.[3]  First, the Court must decide whether the stop was justified at its inception; and second, whether the officer's actions were reasonably related in scope to the circumstances which justified the stop in the first place.[4]  A traffic stop is reasonable if the officer has reasonable and articulable suspicion that criminal activity is afoot.[5]  To satisfy this reasonable suspicion standard, the officer must have a particularized and objective basis for believing the individual has committed a crime.[6]  The reasonableness of the officer's actions is judged objectively, taking into account the totality of the circumstances.[7]

It is clear that Officer Rhodd had reasonable suspicion to stop the vehicle.  Officer Rhodd first noticed a temporary tag that he could not read.  After calling in the temporary tag number, dispatch responded that the tag was "not on file."  While waiting for dispatch, Officer Rhodd drove beside the truck and observed what he believed to be a secret compartment below the bed made of wood, but painted to match the metal beams of the truck.  Officer Rhodd also noticed that another car, which seemed to be traveling with the truck, slowed down and began weaving in and out of it's lane, seemingly trying to distract the officer's attention from the truck.  Under the totality of the circumstances, the Court is convinced that Officer Rhodd had a particularized objective basis for believing the driver of the truck was committing a crime.

---

[3]*United States v. Samuels*, 493 F.3d 1187, 1191 (10th Cir. 2007) (citing *Terry*, 392 U.S. at 19-20).

[4]*United States v. Burkley*, 513 F.3d 1183, 1186 (10th Cir. 2008) (citing *United States v. Botero-Ospina*, 71 F.3d 783, 786 (10th Cir. 1995)).

[5]*United States v. Stephenson*, 452 F.3d 1173, 1176 (10th Cir. 2006) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

[6]*United States v. Cortez-Galaviz*, 495 F.3d 1203, 1206 (10th Cir. 2007) (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

[7]*United States v. Lopez*, __ F.3d __, 2008 WL 570802, at *6 (10th Cir. Mar. 4, 2008) (citing *Arvizu*, 534 U.S. at 273).

Next, the Court addresses defendant's argument that his stop went beyond the scope of the circumstances which permitted the stop in the first place. Defendant is correct that *Edgerton* stands for the proposition that a stop should not be extended once the reason for the stop has dissipated.[8] In our case, however, defendant was stopped not only because Officer Rhodd could not read the temporary tag, but also because the temporary tag came back as "not of file," and because Officer Rhodd believed that defendant's vehicle had a secret compartment.

Moreover, the *Edgerton* Court left open the possibility that the officer could observe other facts leading to the extension of the stop once he approaches the vehicle.[9] In this case, there is no doubt that Officer Rhodd gained independent reasonable suspicion that criminal activity was afoot. First, when Officer Rhodd first signaled for the truck to pull over, the truck instead continued through an intersection and around a gas station parking lot before coming to stop. Second, when Officer Rhodd approached the vehicle, he was able to further see that the compartment below the truck bed was an added wood compartment painted to match the black beams of the truck. Finally, when Officer Rhodd approached the truck and spoke with the driver, he found the driver extremely nervous, and their explanation that they were traveling to do construction work seemed unlikely given the apparent advanced age of the passenger. Further, Officer Rhodd noticed that the truck only had a few pieces of equipment, and a short ladder, not the type of equipment that one would likely need for construction work. In fact, Officer Rhodd testified that it appeared to him that the truck had been "staged" to look like it was a construction truck, but its contents belied its actual use for that purpose. The evidence and

---

[8]*See United States v. Edgerton*, 438 F.3d 1043, 1051 (10th Cir. 2006).

[9]*Id.*

testimony shows that Officer Rhodd had reasonable suspicion to make the stop, and shows that he had developed independent reasonable suspicion once he approached the vehicle. Accordingly, defendant's motion to suppress denied.

Defendant also filed a motion to dismiss or for appropriate sanctions, because the sheriff's department sold the truck before defendant inspected it.  The Due Process Clause requires the police to maintain exculpatory evidence that might be useful to the defendant.[10] Where the police fail in this endeavor, the defendant may obtain relief by showing that the evidence had an apparent exculpatory value before it was destroyed.[11]  Where the evidence is only potentially useful, however, the defendant must show that the authorities acted in bad faith in destroying the evidence.[12]  Potential useful evidence is evidence which, if tested, might exonerate the defendant.[13]

Defendant has not pointed to any evidence fitting the bill under this rule.  Furthermore, at the hearing, defendant announced that he had later found the truck and inspected it.  Defendant also admitted that he had suffered "probably no prejudice."  As such, the Court finds that defendant's motion to dismiss or for sanctions should be denied.

**IT IS THEREFORE ORDERED THAT** Defendant's Motion to Suppress Evidence and Statements (Doc. 44) and Motion to Dismiss or Alternatively for Appropriate Sanctions (Doc. 45) are denied.

---

[10] *Bullock v. Carver*, 297 F.3d 1036, 1056 (10th Cir. 2002).

[11] *Id.*

[12] *Id.*

[13] *United States v. Bohl*, 25 F.3d 904, 911 (10th Cir. 1994).

**IT IS SO ORDERED.**

Dated this 28th day of March 2008.

 S/ Julie A. Robinson
**Julie A. Robinson**
**United States District Judge**

Memorandum and Order in *United States v. Wade A. Glasscock*, 07-40082-JAR.